1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11

ALEJANDRINA PENA,                    )    Case No. EDCV 09-772 JC
                                     )
12                Plaintiff,         )
                                     )    MEMORANDUM OPINION
13           v.                      )
                                     )
14                                   )
     MICHAEL J. ASTRUE,              )
15   Commissioner of Social          )
     Security,                       )
16                                   )
                  Defendant.         )
17   _____ )

18

19   **I.    SUMMARY**

20        On April 27, 2009,  plaintiff Alejandrina Pena ("plaintiff") filed a

21   Complaint seeking review of the Commissioner of Social Security's denial of

22   plaintiff's application for benefits.  The parties have consented to proceed before a

23   United States Magistrate Judge.

24        This matter is before the Court on the parties' cross motions for summary

25   judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The

26   Court has taken both motions under submission without oral argument.  See Fed.

27   R. Civ. P. 78; L.R. 7-15; May 1, 2009 Case Management Order ¶ 5.

28   ///

1

1    Based on the record as a whole and the applicable law, the decision of the
2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge
3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**
5    **DECISION**

6    On December 8, 2005, and February 1, 2006, plaintiff filed applications for
7    Disability Insurance Benefits and Supplemental Security Income benefits.
8    (Administrative Record ("AR") 12, 94-104).  Plaintiff asserted that she became
9    disabled on July 1, 2005, due to inflamed spinal disks.  (AR 129).  The ALJ
10   examined the medical record and heard testimony from plaintiff, who was
11   represented by counsel, on January 23, 2008.  (AR 19-36).

12   On May 27, 2008, the ALJ determined that plaintiff was not disabled
13   through the date of the decision.  (AR 12-18).  Specifically, the ALJ found that the
14   objective medical evidence failed to establish the existence of a medically
15   determinable impairment that could reasonably be expected to produce the
16   claimant's symptoms.  (AR 14).

17   The Appeals Council denied plaintiff's application for review.  (AR 1-3).

18   **III.   APPLICABLE LEGAL STANDARDS**

19   **A.    Sequential Evaluation Process**

20   To qualify for disability benefits, a claimant must show that she is unable to
21   engage in any substantial gainful activity by reason of a medically determinable
22   physical or mental impairment which can be expected to result in death or which
23   has lasted or can be expected to last for a continuous period of at least twelve
24   months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.

25
26
27   [1]The harmless error rule applies to the review of administrative decisions regarding
     disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196
     (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social
28   Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of
     application of harmless error standard in social security cases).

1  § 423(d)(1)(A)).  The impairment must render the claimant incapable of
2  performing the work she previously performed and incapable of performing any
3  other substantial gainful employment that exists in the national economy.  <u>Tackett</u>
4  <u>v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

5  In assessing whether a claimant is disabled, an ALJ is to follow a five-step
6  sequential evaluation process:

7  (1) Is the claimant presently engaged in substantial gainful activity?  If
8      so, the claimant is not disabled.  If not, proceed to step two.

9  (2) Is the claimant's alleged impairment sufficiently severe to limit
10     her ability to work?  If not, the claimant is not disabled.  If so,
11     proceed to step three.

12 (3) Does the claimant's impairment, or combination of
13     impairments, meet or equal an impairment listed in 20 C.F.R.
14     Part 404, Subpart P, Appendix 1?  If so, the claimant is
15     disabled.  If not, proceed to step four.

16 (4) Does the claimant possess the residual functional capacity to
17     perform her past relevant work?  If so, the claimant is not
18     disabled.  If not, proceed to step five.

19 (5) Does the claimant's residual functional capacity, when
20     considered with the claimant's age, education, and work
21     experience, allow her to adjust to other work that exists in
22     significant numbers in the national economy?  If so, the
23     claimant is not disabled.  If not, the claimant is disabled.

24 <u>Stout v. Commissioner, Social Security Administration</u>, 454 F.3d 1050, 1052 (9th
25 Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

26 **B.    Standard of Review**
27 Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
28 benefits only if it is not supported by substantial evidence or if it is based on legal

3

1  error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.
2  2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457
3  (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
4  mind might accept as adequate to support a conclusion."  Richardson v. Perales,
5  402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a
6  mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing
7  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

8       To determine whether substantial evidence supports a finding, a court must
9  "'consider the record as a whole, weighing both evidence that supports and
10  evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.
11  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
12  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
13  or reversing the ALJ's conclusion, a court may not substitute its judgment for that
14  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

15  **IV.   DISCUSSION**

16       **A.   Step Two Determination**

17       Plaintiff argues that the ALJ committed reversible error in finding that
18  plaintiff does not have a severe impairment.  (Plaintiff's Motion at 7-9).  The
19  Court disagrees.

20       **1.   Pertinent Law**

21       At step two of the sequential evaluation process, an impairment or a
22  combination of impairments may be found not medically severe only if evidence
23  clearly establishes slight abnormality that has no more than a minimal effect on an
24  individual's ability to work.  Webb v. Barnhart, 433 F. 3d 683, 687 (9th Cir.
25  2005).  To determine whether or not an impairment is severe, the ALJ must
26  determine whether a claimant's impairment or combination of impairments
27  significantly limits her physical or mental ability to do "basic work activities."
28  See id.; see also 20 C.F.R. §§ 404.1521(a), 416.921(a).  Basic work activities are

the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations.  20 C.F.R. §§ 404.1521(b), 416.921(b).

The ALJ must properly evaluate the medical evidence in making a step two determination.  See Social Security Ruling ("SSR") 85-28[2] (ALJ's finding that a claimant lacks a severe impairment must be "clearly established by medical evidence").  In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided.  Courts distinguish among the opinions of three types of physicians:  those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians").  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.), as amended (1996) (footnote reference omitted).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

---

[2]Social Security rulings are binding on the Administration.  See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).  Such rulings reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.  Massachi v. Astrue, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007) (citing SSR 00-4p).

1    A treating physician's opinion is not, however, necessarily conclusive as to

2  either a physical condition or the ultimate issue of disability.  Magallanes v.

3  Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d

4  759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not

5  contradicted by another doctor, it may be rejected only for clear and convincing

6  reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal

7  quotations omitted).  An ALJ can reject the opinion of a treating physician in favor

8  of a conflicting opinion of another examining physician if the ALJ makes findings

9  setting forth specific, legitimate reasons for doing so that are based on substantial

10  evidence in the record.  Id. (citation and internal quotations omitted).   "The ALJ

11  must do more than offer his conclusions."  Embrey v. Bowen, 849 F.2d 418,

12  421-22 (9th Cir. 1988).  "He must set forth his own interpretations and explain

13  why they, rather than the [physician's], are correct."  Id.; see Thomas v. Barnhart,

14  278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed

15  and thorough summary of facts and conflicting clinical evidence, stating his

16  interpretation thereof, and making findings) (citations and quotations omitted).

17  "Broad and vague" reasons for rejecting a treating physician's opinion do not

18  suffice.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir.1989).

19    When they are properly supported, the opinions of physicians other than

20  treating physicians, such as examining physicians and nonexamining medical

21  experts, may constitute substantial evidence upon which an ALJ may rely.  See,

22  e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative

23  examiner's opinion on its own constituted substantial evidence, because it rested

24  on independent examination of claimant); Morgan, 169 F.3d at 600 (testifying

25  medical expert opinions may serve as substantial evidence when "they are

26  supported by other evidence in the record and are consistent with it").

27  ///

28  ///

6

1         **2.    Analysis**

2        In this case, the ALJ rejected the opinion of plaintiff's treating physician,

3 Dr. Khalid Ahmed.  (AR 16-17).  Dr. Ahmed began treating plaintiff in October

4 2004 for an injury sustained at work in March 2004.  (AR 209-17).  He initially

5 diagnosed plaintiff with "lumbar strain disk lesion lumbar spine with radiculitis"

6 and "possible bilateral spondylolysis at L5-S1 with possible 0 to 1 degree

7 spondylolisthesis."  (AR 216).  Electrodiagnostic testing in October 2004 was

8 normal.  (AR 188-91).  An MRI in December 2004 showed a 1-2 mm posterior

9 disk protrusion with disk dessication at the L1-L2 disk level, a 2 mm posterior

10 disk protrusion with disk dessication and moderate hypertrophic facet changes at

11 the L3-L4 disk level, a 2 to 3 mm posterior disk protrusion with disk dessication

12 and moderate hypertrophic facet changes at the L4-L5 disk level, and a 2 to 3 mm

13 central disk protrusion with disk dessication at the L5-S1 disk level.  (AR 200-02).

14 Results of a CT scan were similar.  (See AR 197-99).  Dr. Ahmed continued to see

15 plaintiff, and on June 24, 2005, he opined that she had reached permanent and

16 stationary status.  (AR 161-70).  He described plaintiff's condition as follows:

17               Lumbar spine, the discomfort is best described as

18               constant, slight, intermittent, moderate to severe level

19               with 30 minutes to 35 minutes of standing, 30 minutes to

20               35 minutes of walking, 30 minutes [to] 35 minutes of

21               sitting, and any attempted bending, stooping, and lifting.

22               Objectively restricted the lumbar mobility by 30% with

23               tenderness, tightness, spasms, with a positive straight leg

24               raising on the left with MRI evidence [of] disk herniation

25               at the L5-S1 and disk protrusion at the L4-L5 and L3-L4.

26 (AR 168).  On February 21, 2006, Dr. Ahmed examined plaintiff and reported

27 multiple findings, including a restricted range of spinal motion and positive

28 straight leg raising tests.  (AR 203-06).

1  Dr. Thomas Dorsey, an orthopedist, performed a consultative examination

2  of plaintiff three days after Dr. Ahmed's February 2006 examination.  (AR 222-

3  25).  Dr. Dorsey reported generally normal findings, including negative straight

4  leg raising tests.  (AR 223-25).  In contrast to Dr. Ahmed, Dr. Dorsey opined that

5  plaintiff "has no impairment-related physical limitations," and wrote under

6  "Diagnosis" that plaintiff had "[m]ultiple somatic complaints, without evidence of

7  significant orthopaedic pathology."[3]  (AR 225).

8  At the hearing, non-examining medical expert Dr. William Debolt generally

9  concurred with Dr. Dorsey's findings.  Dr. Debolt testified that the MRI results

10 "do[] not support Dr. Ahmed," and, in light of the normal electrodiagnostic

11 testing, concluded that "the consultative examiner and the other doctor are more

12 correct in their findings than Dr. Ahmed."  (AR 29-30).

13 Because Dr. Ahmed's opinion was contradicted by other physicians, to

14 reject it the ALJ was required to provide specific, legitimate reasons supported by

15 substantial evidence.  The ALJ did so.  He noted "the inconsistency of Dr.

16 Ahmed's February 2006 abnormal findings and conclusions with the essentially

17 normal February 2006 orthopedic findings of Dr. Dorsey," and, relying on Dr.

18 Debolt's testimony and Dr. Dorsey's report, concluded that "Dr. Ahmed's

19 assessments lack any objective medical basis."  (AR 16-17).  Although the ALJ

20 may have overstated the case in opining that "Dr. Ahmed's assessments lack any

21 objective medical basis," "[t]he contrary opinions of [the examining and

22 nonexamining physicians] serve as . . . specific and legitimate reasons for rejecting

23 the opinion[ ] of [plaintiff's treating physician]."  See Tonapetyan, 242 F.3d at

24 1149.

25 Thus, substantial evidence supports the ALJ's finding that plaintiff does not

26 have a severe impairment.  A remand or reversal is not warranted on this basis.

27 ///

28

---

[3]Dr. Dorsey reviewed plaintiff's MRI report.  (AR 222).

1

**B.     Side Effects of Medication**

The Court rejects plaintiff's contention that the ALJ erred by failing to consider the side effects of plaintiff's medication. (Plaintiff's Motion at 3-4). A claimant bears the burden of demonstrating that her use of medications caused a disabling impairment. See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (claimant failed to meet burden of proving medication impaired his ability to work because he produced no clinical evidence). The only evidence plaintiff points to in support of her contention are cursory references in a disability report form that she experiences nausea from two of her medications, and a physician's recommendation that she continue taking her prescription medications. (Plaintiff's Motion at 3-4 (citing AR 157, 204)). Plaintiff offers no objective evidence that her medications affected her in the way she claims, let alone that they interfered with her ability to work. See Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) ("There were passing mentions of the side effects of [plaintiff's] medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with [his] ability to work."). The ALJ did not err.[4]

**C.     Duty to Develop the Record**

Plaintiff asserts that the ALJ erred by failing to develop the record concerning plaintiff's alleged depression. (Plaintiff's Motion at 4-6). The Court disagrees.

**1.     Pertinent Law**

Although plaintiff bears the burden of proving disability, the ALJ has an affirmative duty to assist the claimant in developing the record "when there is ambiguous evidence or when the record is inadequate to allow for proper

---

[4]Plaintiff appears to suggest that the ALJ erred by failing to consider all possible side effects related to plaintiff's medication. (Plaintiff's Motion at 3-4). Plaintiff's argument has no merit. The ALJ was not required to address undocumented medication side effects. See Miller, 770 F.2d at 849 (ALJ properly rejected allegations of impairment from medication side effects where plaintiff produced no clinical evidence that narcotics use impaired his ability to work); Osenbrock, 240 F.3d at 1164.

9

1   evaluation of the evidence." <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir.

2   2001) (citation omitted); <u>Bustamante v. Massanari</u>, 262 F.3d 949, 954 (9th Cir.

3   2001); <u>see also</u> <u>Webb</u>, 433 F.3d at 687 (ALJ has special duty fully and fairly to

4   develop record and to assure that claimant's interests are considered).  Where it is

5   necessary to enable the ALJ to resolve an issue of disability, the duty to develop

6   the record may require consulting a medical expert or ordering a consultative

7   examination.  <u>See</u> 20 C.F.R. §§ 404.1519a, 416.919a; <u>see, e.g.</u>, <u>Armstrong v.</u>

8   <u>Commissioner of Social Security Administration</u>, 160 F.3d 587, 590 (9th Cir.

9   1998) (where there were diagnoses of mental disorders prior to the date of

10  disability found by the ALJ, and evidence of those disorders even prior to the

11  diagnoses, the ALJ was required to call a medical expert to assist in determining

12  when the plaintiff's impairments became disabling).

13          The ALJ is not obliged to undertake the independent exploration of every

14  conceivable condition or impairment a claimant might assert.  Therefore, an ALJ

15  does not fail in his duty to develop the record by not seeking evidence or ordering

16  further examination or consultation regarding a physical or mental impairment if

17  no medical evidence indicates that such an impairment exists.  <u>See</u> <u>Breen v.</u>

18  <u>Callahan</u>, 1998 WL 272998, at *3 (N.D. Cal. May 22, 1998) (noting that, in the

19  Ninth Circuit, the ALJ's obligation to develop the record is triggered by "the

20  presence of some objective evidence in the record suggesting the existence of a

21  condition which could have a material impact on the disability decision") (citing

22  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir. 1996); <u>Wainwright v. Secretary of</u>

23  <u>Health and Human Services</u>, 939 F.2d 680, 682 (9th Cir. 1991)).

24                    **2.    Analysis**

25          Here, the record lacks objective evidence of a mental impairment sufficient

26  to trigger the ALJ's duty to inquire further.  Although plaintiff once wrote that she

27  "get[s] depressed" (AR 158) and there is evidence that she has been prescribed

28  Xanax (AR 204), the record contains no objective assessment of plaintiff's mental

1   health, much less any diagnosis of a mental impairment.  Plaintiff carries the initial

2   burden of proving disability.  <u>Burch</u>, 400 F.3d at 679.  Under these circumstances,

3   the ALJ had no duty to develop the record by diagnosing plaintiff's alleged mental

4   impairment.  <u>See Mayes</u>, 276 F.3d at 459-60 (ALJ "had no duty to develop the

5   record by diagnosing [claimant's] herniated discs" where claimant "did not

6   provide the ALJ with any medical evidence indicating that she had herniated discs

7   until after the ALJ hearing"); <u>Thornton v. Astrue</u>, 2010 WL 1904661, at *6 (E.D.

8   Wash. May 12, 2010) (plaintiff's "unsupported testimony" insufficient to trigger

9   ALJ's duty to develop record regarding alleged mental impairment where

10  "acceptable medical sources made no mental health diagnoses" and medical record

11  did not reveal "depression symptoms or complaints").  The ALJ did not err.

12  ### D.   Consideration of Mental Impairment

13          The Court rejects plaintiff's argument that the ALJ erred by failing to

14  evaluate the functional limitations stemming from plaintiff's alleged mental

15  impairment.  (Plaintiff's Motion at 6-7).  Plaintiff is correct that, for a claimant

16  with a mental impairment, an ALJ must follow a "special technique" and rate and

17  document the claimant's degree of limitation in four functional areas.  <u>See</u> 20

18  C.F.R. §§ 404.1520a, 416.920a.  But this procedure is only required for claimants

19  with "a medically determinable mental impairment."  <u>Id.</u> §§ 404.1520a(b),

20  416.920a(b).  In this case, the ALJ properly found that plaintiff did not have a

21  mental impairment, as discussed above.  The ALJ therefore did not err by failing

22  to follow the "special technique" for assessing mental impairments.

23  ### E.   Lack of Vocational Expert Testimony

24          Finally, the Court rejects plaintiff's contention that the ALJ erred by failing

25  to obtain vocational expert testimony at step five.  (Plaintiff's Motion at 10).  As

26  discussed above, the ALJ properly concluded his analysis at step two by

27  determining that plaintiff does not have a severe impairment.  The ALJ therefore

28  was not required to conduct a step five inquiry.

**V.     CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  September 2, 2010

_____/s/_____

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

12